UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 02-61191-CIV-HUCK

MERRILL LYNCH BUSINESS FINANCIAL
SERVICES, INC.

Plaintiff,

vs.

FRANK L. AMODEO AND JAMES
SADRIANNA,

Defendants.

_____/



FILED by _____ D.C.

MAR 10 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## AFFIDAVIT

I, Frank L. Amodeo, having been first placed under oath, swear upon as follows, that I am a resident of Orange County Florida; I am over the age of 18 and all the statements contained herein are made from my personal knowledge.

**I.**

This affidavit is being filed in compliance with the court's ruling of February 28, 2003, directing each of the parties in the above styled case to file an affidavit on their compliance with the discovery order of December 6, 2003, and the subsequent discovery order of February 7, 2003.

On or about December 18, 2002, in order to make available to Merrill Lynch the discovery they requested in their original request for discovery, I provided to IKON copying service the following documents: Seven (7) bankers boxes of original material concerning Signature Graphics, Inc. and Smith International Enterprises, Inc., and



Twenty two (22) notebooks of books and records of Signature Graphics, Inc. in their original form that were in my possession covering the time period from January 2002 through July 2002.

I told Counsel for Merrill Lynch, that these boxes had been delivered and that I lacked the financial resources to copy them. They requested I pay for the copies and bill Gray Harris. When speaking with IKON, IKON said that I did not have established credit with them, and Gray Harris would have to provide for a purchase order or some similar arrangement, in order to commence the copying. I gave them the telephone number of Ms. Hoke and they began to communicate directly. Someplace in the beginning of the following week, I discovered that Merrill was not willing to pay the costs of duplicating all the documents. I told them I was unwilling to release the originals to their possession because I was concerned about the integrity of the documents outside of independent care. However, I did agree to provide the documents in sequence and I took to Ms. Hoke on December 27, 2002, the seven (7) banker boxes of documents. I also delivered to her on that day, one of the notebooks so she could determine what the contents of those notebooks were.

## II.

The contents of the notebooks include: computer generated financial reports, usually, but not always the income statement and balance sheet, but they do contain the trial balance report, which is how the first two are derived. The notebooks include a general ledger, cash disbursement, check disbursement, account payables aging, account receivables aging as well as all the actual payment support for each and every check written in a separate section. The notebooks also included various contracts and minutes

of the meetings which took place during those time periods and the bank statements with cancelled checks for the checking accounts. At this point, I wish to make it clear I was not an officer of Signature Graphics, Inc. and was not responsible for maintaining the books and records.

### III.

After no successful movement had been made on whether Gray Harris or Merrill had to pay for the copies before they were made, the first hearing on sanctions took place, at which time the court ordered the documents be taken back to the copying service and that Merrill be instructed to pay for them. Part of the notebooks were redelivered to IKON before the purchase order came through, the balance were being held until after IKON received authority from Gray Harris to charge the copying to their account. This authority took place at end of day on February 12, 2003. On the following day, Amodeo ordered the balance of the notebooks to be sent to IKON copying service. IKON copying service, being in the middle of a project, could not send a delivery truck to pick them up. I arranged a courier to deliver the notebooks. The courier dropped the notebooks off and IKON proceeded to copy the notebooks. This delivery consisted of twenty two (22) notebooks, the 23rd notebook was already given to Gray Harris to review on December 27, 2002. Of these notebooks, certain of them were actually for the month of August 2002, the records of which are not now, or ever have been, in Amodeo's possession. They do not appear to have been compiled by Signature Graphics, Inc. If compiled, they were probably sent to the Chapter 7 Trustee, there is a letter from Mr. Sadrianna to the Trustee, on September 16, 2002, which indicates this was the case. When it became apparent the following Tuesday evening after the notebooks were returned by the courier

to me. I contacted Ms. Hoke to let her know there were three (3) books comprising the months of January, February and March that I would be glad to return them to IKON for copying. Before this took place, Merrill had filed their second motion for sanctions, although they had not served said motion on me. Thereinafter, the court scheduled a telephone conference and I spoke with Ms. Hoke and informed her I would be happy in this case to turn over the three (3) original notebooks to her. I had them delivered to the offices of Gray, Harris in Orlando, the same location at which I originally delivered the boxes to Ms. Hoke, two days before the second hearing. Based upon my conversation with Ms. Hoke on March 5, 2003, (I now know that the office in Orlando appears to have not told Ms. Hoke that they received these documents. She was unaware that the information she requested for January, February and March were already in her firm's possession.)

### IV.

This part covers the discovery issues that were part of the original conference between me and Gray, Harris originally scheduled for March 4, 2003, which at the request of counsel of Merrill Lynch was rescheduled to 3:30 p.m. March 5, 2003.

To begin with, it was most distressing to discover Ms. Hoke was informing me they were still in the process of compiling the documents they had already received and that word processing probably had the CD ROMS that contained a substantial amount of the information needed from both myself and Mr. Sadrianna, and literally at the time we were speaking on March 5, 2003, they were still unsure what documents they had received on the CD ROMS. Yet, they filed these motions for sanctions a few weeks earlier, before investigating what was on the disc.

The second issue that arose was concern over Signature Graphic's financial statements for the months prior to those they received, which they believed were May 2002 and actually proved to be those before April 2002. These are the aforementioned notebooks which were delivered to their Orlando office two weeks prior to the time of this conference.

The next issue that came up in our discussion of what Merrill needed was the SunTrust pre-petition bank accounts of Signature Graphics, Inc. I told Ms. Hoke I would provide to her the same list that I provided the Internal Revenue Service in requesting an audit of these companies. This list was derived from the cancelled checks which were contained in the notebooks which IKON duplicated for Merrill Lynch. Nonetheless, with a target date of March 7, 2003 and certainly within the court's direction of March 10, 2003, I'll provide a list with the bank account numbers, account names and addresses to the Orlando Office of Gray, Harris & Robinson for signed delivery.

Next, she inquired about the pre-petition records for Smith International Enterprises, Inc. I informed her that I do not have the records, nor have I ever had the records. As far as I know, the records remained in the location in Fort Lauderdale, the entire time from the beginning of my involvement until the time the Trustee took the facility over. As far as I know, they are still located at that location, or in possession of the Chapter 7 Trustee. Please see a copy of the letter to the Chapter 7 Trustee, which I sent on March 7, 2003 and I attach hereto incorporate into this affidavit.

Furthermore, I let her know concerning these records that some of that financial data was probably contained on the CD ROM I had sent her. Since they had not yet looked at the CD, they were unaware as to whether they had this information or not, and

to this point in time (1:00 p.m., March 7, 2003), I have not heard back from them concerning what information they were still missing or what information they were able to retrieve from the disc.

They next inquired about the corporate books and records for Smith International Enterprises, Inc. I told them these records were at the law offices of Berger and Davis, where they had been for sometime. A debt was owed to Berger and Davis, and they had refused to release the records. Sometime, early in the bankruptcy case, Mr. Hill on behalf of the debtor requested these documents be turned over. To the best of my knowledge, they were never turned over and still remain in the possession of Berger and Davis. If these documents have some relevance to this case, I would be happy to arrange for a subpoena under the bankruptcy court discovery power to obtain those records. I only wait for their subsequent request to cause the subpoena to issue.

Ms. Hoke asked about the stock certificates or it came up in part of our discussion, I believe the stock certificates from C. Leo Smith and Pilar Concha were turned over to Signature Graphics, Inc. sometime during the bankruptcy case. In fact, I seem to remember seeing the certificates in early June. However, I am not in possession of those stock certificates.

They asked about the minutes of the meetings. I told them all the minutes I had were contained in the notebooks. Typically speaking, although I was authorized to attend the meetings as both a shareholder and consultant, I had no reason to keep copies of any of the records, since that was not part of my contract description. The only time I began to keep records of the minutes was after May 6, 2002, when the Signature Board of Directors turned down one of my recommendations and I began to suspect the long-term

success of the business might be in question. After that time I did keep those minutes and have turned them over as part of the discovery.

There were some questions concerning the records of Signature Graphics for 15 months prior to the bankruptcy. I clarified this for Ms. Hoke that Signature Graphics was formed in September of 2001 and hadn't existed for 15 months. Second, I was only in possession of the records from the year 2002, and do not have possession of the records from 2001. Nonetheless, they could probably derive the 2001 information from the data that was on Mr. Sadrianna's CD ROM, which they had apparently not yet examined. The 15 month period Ms. Hoke spoke of, actually involved two copies of the computerized general ledger of Smith International Enterprises, Inc. printed at the time of the bankruptcy filing, or shortly thereafter. One of those copies was delivered to Mr. Hill's office, the other copy was delivered to the U.S.Trustee's office here in Orlando. At some point in time, it appears that the copy that was in Mr. Hill's possession was transferred to Mr. Morrison, who is the original examiner of the case, although Mr. Morrison was subsequently disqualified due to a conflict of interest, because his firm was representing Signature Graphics, Inc. Nonetheless, one copy which I believe is the one from Mr. Morrison has been turned over to Mr. Kapilla. It is the copy that he will be using to prepare his compilation set forth in the examiners report. In other words, Merrill already has all of the general ledger as part of the exmainer's report. I did go to Mr. Hill's office, met with Mary, his administrative legal assistant, who took me to the document file room. We went through the box of documents in the Smith International case, where we discovered Mr. Hill did not keep that copy of the general ledger, and it appears it was turned over to Mr. Morrison.

When Ms. Hoke asked about the inventory, I informed her the inventory as I knew it was based upon an actual physical inventory taken by Mr. Gage, under Mr. Davis's direction. This is disclosed in the bankruptcy schedule B and Gray Harris has been served a copy of those bankruptcy schedules, thus this information is already in their possession. These documents are also public record and easily obtainable. Further, each and every month thereinafter, a monthly report was prepared for bankruptcy case; which would show any change in the assets, including inventory and accounts receivables. These documents are filed with the court and remains a matter of public record, these were also served upon counsel for Merrill Lynch.

Ms. Hoke then inquired about the pre-petition inventory. I mentioned again that I did not have any involvement with Smith International pre-petition before the end of April. The first time I was personally present to review anything such as inventory was on May 17, 2001, well after the bankruptcy case commenced. Prior to the bankruptcy, there appeared to be no record of inventory and only a deminimus actual amount which was the very reason why they wanted Signature involved. In this regard, I pointed out to Ms. Hoke the standard policy of Smith International was to not keep inventory records and had been that way for at least two years. The inventory dollar amount down on the financial statements I saw remains the same month after month after month, i.e. it was a "plus". All these financial statements were delivered to Merrill pursuant to terms of the contract. Further in May, it was my understanding they had already been given a copy of the independent audit performed by Deloitle and Touche. This indicates there was no consistent method of keeping inventory, and they could not sign off on the audit because

they couldn't verify the inventory receipts. Merrill should still have this document. As a precaution, I will send them a copy of cover sheet.

Finally, I told Ms. Hoke that Cornerstone Group which took over control of the facility and Signature Graphics on or about July 9, 2002 had turned over the documents to a Chapter 7 Trustee, and I would provide her with that documentation as well as with a target date of Friday, March 07, 2003 but before court's direction of March 10, 2003. At which point in time she asked me "who Cornerstone was?" thsi amazed me since they had been involved with Smith International since before I was involved. I agreed to send her the copies of the documents that I had regarding Cornerstone which predated my involvement with Smith International and the final letter which indicates that Cornerstone turned the documents over to the Chapter 7 Trustee.

### V.

In this section I would like to point out specific relevant information. I informed Ms. Hoke again that Steve Miestle was the comptroller of Smith International up to and including the beginning of the bankruptcy case. He was responsible for keeping the books and records, and if I could provide his address, I would do so. However the information I have has already been provided because it is on the copies of the W-2's. Ms. Hoke acknowledged she had a copy of the W-2's of the employees.

In addition we discussed the stock ledger book of Signature Graphics. I indicated to her that I did not believe the stock ledger book was ever kept or maintained. I don't remember it being done, it is not in my possession. I do know that stock certificates were issued to all the shareholders because they were handed out at various meetings of directors or directors and shareholders, and I witnessed the certificates being issued.

I am unaware of the location of Signature Graphics bylaws. I told Ms. Hoke the Articles were on file with the Secretary of State, I offered to "pull down" the data from the Secretary of State; the articles of incorporation. She indicated she was capable of accomplishing the same task.

Other than that, I have had no further communication with them concerning other documents that are missing. I assume they will submit their affidavit in time, and if anything is contained in there, I will address it.

### VI.

First, let me make it clear that the submission of these affidavits or the providing of the documents in no way is meant to release or obviate any of the objections to the relevance, reasonableness or appropriateness of the original request for production by Merrill Lynch.

Further Sayeth the Affiant Naught.

_____
Frank L. Amodeo


Sworn to or subscribed before me by Frank L. Amodeo, who first took an oath on March 7, 2003 and who is personally known to me or produced his driver's license as identification.

_____
Notary Public, State of Florida
Commission expires 8/13/2006

Hallie L Zobel
My Commission DD133308
Expires August 13, 2006

# CREDIX CORPORATION
2875 S. Orange Ave.
Suite 500, PMB 1810
Orlando, FL 32806

March 7, 2003

Mr. James Orr, Trustee
PO Box 780519
Orlando, FL 32878-0519

Dear Mr. Orr,

I am sending you this letter in my capacity as President of Smith International Enterprises, Inc. As you are undoubtedly aware there remains extensive litigation taking place outside of bankruptcy as well as the contested matter inside of bankruptcy case.

Part of the discovery request that has been made of me in an individual capacity has been to produce certain original bank statements and other records of Smith International Enterprises, Inc. Those documents I believe are in your possession and control and I would request that you make them available to me so that they may be copied as needed. Alternatively, that you make them available to counsel for Merrill Lynch so that they may review them in your possession and determine what if any of those documents are required in the various proceedings.

Furthermore, accept this as an official request to see if you are in possession of the hard copy of the general ledger, or alternatively the computers which contain the general ledger for Smith International Enterprises, Inc. from the time period preceding the filing of the bankruptcy case.

If you could please respond to me individually or through the debtor's counsel, Mr. Hill, I would greatly appreciate it. Thank you very much for all your consideration.

Sincerely,

*[signature]*
Frank L. Amodeo

Cc: Peter Hill, Esq.

Letter

**CREDIX CORPORATION**
2875 S. Orange Ave.
Suite 500, PMB 1810
Orlando, FL 32806

March 7, 2003

Mr. Soneet Kapilla
1000 South Federal Highway, #200
Ft. Lauderdale, FL 33316

Dear Mr. Kapilla,

As you aware there is ongoing litigation concerning Smith International Enterprises, Inc. One of the documents that has been requested in discovery is the hard copy of the general ledger. It is my understanding this document was provided to you by Mr. Morrison when you took over the examiners role from him. It appears this is the document you used to create your compilations in your report. This document has been requested in discovery by Merrill Lynch. In order to facilitate the district court judge's discovery order, I am attempting to locate the document so that Merrill Lynch can obtain a copy of it. The court has instructed them to pay for the cost of copying.

If you have the copy in your possession, I would greatly appreciate your letting me know, so that I can inform Merrill to contact you. If you do not have it in your possession, if you could tell me who it was transferred to, I would appreciate that information as well. Thank you very much.

Sincerely,

Frank L. Amodeo
President
Smith International Enterprises, Inc.

Cc: Peter Hill, Esq.

Letter 2

# CREDIX CORPORATION
2875 S. Orange Ave.
Suite 500, PMB 1810
Orlando, FL 32806

March 7, 2003

Ms. Miriam Suarez
U.S. Trustees Office
135 W. Central Blvd., Suite 620
Orlando, FL 32801

Dear Ms. Suarez,

I am currently in search of the original hard copy of the general ledger of Smith International Enterprises, Inc. This document was produced shortly after the bankruptcy case was filed and was delivered to your office somewhere on or about the time that the original debtor interview in late May of 2002. If you can check your records to see if you still have your copy of this document, it would be greatly appreciated. The district court judge has authorized Merrill Lynch to have a copy of said document and has instructed me to assist in locating it. I do believe a copy is with Mr. Kapilla, however I also believe a copy is in your possession.

 If you could contact Mr. Hill and let him know whether you have possession of this document, then we will be able to make arrangements for Merrill to come and pay for a copy.

I appreciate any help you can give in this regard, thank you very much.

Sincerely,

Frank L. Amodeo
President
Smith International Enterprises, Inc.


]

Cc: Peter Hill, Esq.

Letter 3